## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **EDWARD F. BREAUX, JR., ET AL** | **CIVIL DOCKET NO. 6:22-CV-05169 (LEAD)**<br>**CIVIL DOCKET NO. 6:22-CV-05254 (MEMBER)** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **KEVIN RAY WORRELL, ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

### MEMORANDUM RULING

Before the Court are two MOTIONS TO DISMISS OR, ALTERNATIVELY, MOTIONS FOR SUMMARY JUDGMENT (the "Motions") [Docs. 49, 51] filed by Defendants, Kevin Ray Worrell, the City of Wilson, North Carolina, The Travelers Indemnity Company, and Travelers Property Casualty Company of America (collectively, "Defendants").[1] The Motions are opposed by Plaintiffs Edward and Linda Breaux and Jessie and Vickie Blanchard.    [Docs. 53, 56].   The Court heard oral argument at Plaintiffs' request on January 19, 2024. [Docs. 53, 57].   After careful consideration of the pleadings, memoranda, summary judgment evidence, and applicable law, and for the following reasons, Defendants' Motions for Summary Judgment are GRANTED.

### BACKGROUND

In anticipation of Hurricane Ida, Governor John Bel Edwards declared a State of Emergency pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. 29:721 *et seq.*, from August 26, 2021, to

---

[1]      Though Defendants filed their Motion under both Federal Rules of Civil Procedure 12 and 56, the Court will analyze it as a summary judgment motion under Rule 56.

September 27, 2021. [Doc. 49-3, pp. 1-2]. When Hurricane Ida struck the Louisiana coast on August 29, 2021, the city of Houma suffered significant damage, including widespread loss of electrical power to its residents.

Terrebonne Parish Consolidated Government ("Terrebonne Parish"), through its Utilities Department, operates Houma's electric system and services about 13,000 customers.[2] [Doc. 49-5, p. 3]. Due to the scope of the post-hurricane devastation, Terrebonne Parish requested assistance from Lafayette Utilities Systems ("LUS") to help its employees in restoring power. [Doc 49-5, p. 3]. LUS then used its mutual aid network to request help from the City of Wilson, North Carolina ("City of Wilson") on behalf of Terrebonne Parish. [Doc 49-5, p. 3]. Pursuant to this arrangement, Terrebonne Parish signed a mutual aid agreement provided to it by the City of Wilson.[3] [Doc. 49-6, pp. 98-100]. In response, the City of Wilson dispatched 13 employees to assist in the hurricane recovery effort in Louisiana. [Doc. 49-5, p. 4]. One of these employees was Kevin Ray Worrell ("Worrell"). [Doc. 49-5, p. 28].

LUS arranged for the City of Wilson employees to stay at hotels in Lafayette, Louisiana, and commute back and forth to Houma every day to perform their duties.

---

[2]     Terrebonne Parish Consolidated Government provides complete local government services, including a Utilities Department, which includes both the generation and distribution of electrical power to residents of the parish.
*See* https://tpcg.org/index.php?f=utilities.

[3]     The City of Wilson also signed LUS's Request for Mutual Aid Pursuant to APPA Mutual Aid Agreements and Addendum. [Doc. 49-5, pp. 56-61]. The Parish President of Terrebonne Parish signed the Louisiana Mutual Aid Agreement. [Doc. 49-6, p. 97]. Additionally, the Utilities Director for Lafayette signed the City of Wilson's Emergency Assistance Agreement and Addendum. [Doc. 49-6, pp. 103-113]. The Terrebonne Parish Utilities Director also signed the City of Wilson's Emergency Assistance Agreement and Addendum. [Doc. 49-6, pp. 98-100].

[Doc. 49-5, p. 3].  On September 10, 2021, while driving a 2009 Ford F350 owned by the City of Wilson back to his hotel in Lafayette from Houma, Worrell collided with Plaintiffs' vehicle at the Morgan City exit to Highway US 90.  [Doc. 53-3, pp. 4-8].  The responding officer cited Worrell with failure to yield at a stop sign.  [Doc. 53-3, p. 5].  Plaintiffs brought two separate negligence actions against Defendants, which were consolidated by the Court.  [Doc. 14].

Because of the subject accident's nexus with hurricane recovery efforts, Defendants now raise by way of the Motions the affirmative defense of immunity under the Louisiana Homeland Security and Emergency Assistance and Disaster Act's immunity provision, La. R.S. 29:735(A)(1).  [Docs. 47, 48].  The Motions are now ripe for ruling.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, the court determines, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  When considering a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  However, when the relevant facts are undisputed, the court

"need only decide whether those undisputed facts ... entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

## LAW AND DISCUSSION

This Court's jurisdiction over this matter is premised on the parties' diversity of citizenship and no claims or defenses arise under federal law or the laws of another jurisdiction. Accordingly, the substantive law of the State of Louisiana applies to the asserted claims. U.S.C. § 1332; *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 834 (5th Cir. 2014).

The Louisiana Legislature promulgated the Homeland Security and Emergency Assistance and Disaster Act (the "LHSEADA" or the "Act") "[b]ecause of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from ... natural or manmade causes ..." La. R.S. 29:722(A). The LHSEADA created and designated the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP") as the primary agency charged with emergency preparedness and further authorized the creation of local organizations for emergency preparedness within Louisiana's political subdivisions. La. R.S. 29:722(A)(1). The Act governs the state's response to these emergencies and authorizes and provides for cooperation among the state's many agencies and political subdivisions in preparing for and responding to

emergencies and natural disasters.  La. R.S. 29:722(A)(7).  Important here, the Act

also houses an immunity provision which reads as follows:

> Neither the state nor any political subdivision[4] thereof, nor other state
> agencies, nor, except in case of willful misconduct, the employees or
> representatives of any of them engaged in any homeland security and
> emergency preparedness and recovery activities, while complying with
> or attempting to comply with this Chapter or any rule or regulation
> promulgated pursuant to the provisions of this Chapter shall be liable
> for the death of or any injury to persons or damage to property as a result
> of such activity.

La. R.S. 29:735(A)(1) (the "Immunity Provision").  The Act defines Emergency

Preparedness as "the mitigation of, preparation for, response to, and the recovery

from emergencies or disasters."  La. R.S. 29:723(6).  The Act further defines a

"Disaster" to specifically include hurricanes.  La. R.S. 29:723(4).

Claims of immunity under La. R.S. 29:735 are treated as an affirmative

defense under Louisiana law.  *Banks v. Par. of Jefferson*, 08-27 (La. App. 5 Cir.

6/19/08), 990 So. 2d 26, 30, *writ denied*, 2008-1625 (La. 10/24/08), 992 So. 2d 1043,

(citing *Rogers v. State ex rel. Dept. of Public Safety & Corrections*, 2007-1060 (La. App.

3 Cir. 1/30/08), 974 So.2d 919, *writ denied* 08-504 (La. 4/25/08), 978 So. 2d 37).  As

such, despite Plaintiffs' burden at trial to prove Defendants' liability for the claims

alleged, Defendants bear the burden of proving the applicability of the Immunity

Provision to the Plaintiffs' claims.  *Monteville v. Terrebonne Parish Consolidated

Gov't*, 567 So. 2d 1097, 1106 (La. 1990); *Abadie v. Markey*, 97-684 (La. App. 5 Cir.

---

[4]     "[A] political subdivision of a state is a subdivision thereof to which has been delegated
certain functions of local government." *Commander v. Bd. Of Comm'rs of Buras Levee Dist.*,
11 So. 2d 605, 607 (La. 1941).  Political subdivisions include both parishes and municipalities.

3/11/98), 710 So. 2d 327, 332.  As a general rule of construction, immunity statutes are strictly construed against the claiming party.  *Monteville*, 567 So. 2d at 1101.

In their Motions, Defendants assert that there is no genuine dispute of material fact that Worrell and the City of Wilson qualify for immunity from the claims alleged under the Act's Immunity Provision.  In this regard, they assert that Worrell and the City of Wilson, in providing services to assist Terrebonne Parish in restoring power to its citizens, were acting as "representatives" of Terrebonne Parish while engaged in "emergency preparedness measures" – which specifically encompass hurricane relief and recovery efforts.  They also argue that the only exception to this immunity, willful misconduct, is not pleaded by Plaintiffs.

Conversely, Plaintiffs assert that immunity does not apply to the Defendants because Worrell and the City of Wilson were not agents or representatives of Terrebonne Parish or Louisiana, and at the time of the accident, Worrell was not engaged in emergency preparedness activities.  In support of their first argument, Plaintiffs point to payroll records which indicate Worrell was a payroll employee of the City of Wilson at the time of the accident.  Secondly, Plaintiffs argue that Defendants contractually defined the relationship between the parties in the Mutual Aid Agreement and Addendum, which allegedly characterized the Municipality, when performing services under the Agreement, as an "independent contractor" and the Municipality's personnel as "employees of the Municipality."[5]  Because of the

---

[5]     The cited provision of the Mutual Aid Agreement states,

Personnel furnished by the Municipality pursuant to this Agreement shall be conclusively deemed, for all purposes, to remain officials and employees of the

Agreement, Plaintiffs assert that the City of Wilson and Worrell cannot be characterized as agents or representatives of Louisiana or Terrebonne Parish. Further, Plaintiffs cite a decision from another district in which that court – in deciding whether to apply the Immunity Provision – looked to whether a state agency exercised a direct relationship with the "representative," whether the agency provided assignments, and whether the agency maintained operational control. *See Banks v. City of New Orleans,* 628 F. Supp. 2d 686, 691 (E.D. La. 2009) (finding genuine issues of material fact existed as to whether the United States Army Corps of Engineers was acting as a contractor or a representative of the City of New Orleans when it demolished a homeowner's home in the aftermath of Hurricane Katrina). Seeking to expand upon the rationale used in *Banks*, Plaintiffs assert that the operational control factors in that case are analogous to Louisiana's "borrowed

---

Municipality and while providing aid hereunder and while traveling to and from a Beneficiary to provide aid hereunder, such personnel shall retain all rights, privileges, immunities, and benefits, including without limitation, coverage under the North Carolina Workmen's Compensation Act, as they enjoyed while performing their normal duties for the Municipality.

[Doc. 46-6, p. 94].

The pertinent language of the Mutual Aid Agreement Addendum is as follows:

The Municipality is performing services under this Agreement as an independent contractor and shall act as such at all times during the term of this agreement.  The Municipality and the Beneficiaries shall not act, or be deemed to act, as agents or partners of the other, or be acting in any joint venture under this Agreement. Nothing in this paragraph 14 shall be construed to require the Municipality to obtain or maintain a contractor's license.

[Doc. 49-6, p. 99].

servant" analysis.[6]   Plaintiffs maintain that because the City of Wilson retained operational control of Worrell under each factor of the borrowed servant analysis, Worrell was not a representative of Terrebonne Parish under the LHSEADA Immunity Provision.   Alternatively, they argue that, as in *Banks*, there is at least a genuine dispute of material fact as to whether Defendants were acting as representatives of the Parish.[7]

Lastly, Plaintiffs argue that the Immunity Provision should not apply because no Louisiana case discusses emergency immunity as applicable to the private sector, to an independent contractor, or to an employee of an independent contractor working at the behest of the state.   As an issue of first impression, Plaintiffs urge that genuine

---

[6]      The borrowed servant doctrine is the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer. It permits the injured worker to recover from the company that was actually directing his work.  *Baker v. Raymond Int'l*, 656 F.2d 173, 178 (5th Cir. 1981) (citing *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224-26 (5th Cir. 1975)).   A court analyzes the following factors in determining whether an employee is a borrowed servant: (1) who has the right of control over the employee beyond the mere suggestion of details or cooperation; (2) who selected the employee; (3) who paid the employee's wages; (4) who had the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) was the new employment over a considerable length of time; (7) whose work was being done at the time of the accident; (8) was there an agreement between the borrowing and lending employers; (9) did the employee acquiesce in the new work situation; and (10) did the original employer terminate his relationship with or relinquish his control over the employee.  *Bourque v. Tony Chachere's Creole Foods of Opelousas, Inc.*, 2020-371 (La. App. 3 Cir. 10/28/20), 305 So. 3d 949, 952–53, writ denied, 2020-01372 (La. 1/26/21), 309 So. 3d 347 (citing *Green v. Popeye's Inc.*, 619 So. 2d 69 (La. App. 3 Cir.1993)).

[7]      The Blanchard Plaintiffs also cite to this borrowed servant analysis, albeit for different reasons.  They claim that because Defendants made an argument contrary to the express terms of the Mutual Aid Agreement and Addendum in characterizing Worrell as an employee of Terrebonne Parish, perhaps Defendants meant to assert that Worrell was an employee under the "borrowed servant" analysis. After analyzing each factor, they claim that no factor of the analysis is met, and thus, Worrell was not even a borrowed employee of Terrebonne Parish.

disputes of material fact exist as to whether Defendants Worrell and the City of Wilson were acting as representatives of the State of Louisiana or one of its political subdivisions under the Act.

Next, Plaintiffs argue that Worrell was not specifically engaged in power restoration at the time of the accident.  Plaintiffs contend that when the City of Wilson's crew ended its workday, the crew's engagement in any type of emergency service ended as well.  Thus, according to Plaintiffs, Worrell was on "personal time" when he was driving back to his lodging in Lafayette after a full day of restoration work in Houma.

Although the application of this Immunity Provision is broadly recognized in Louisiana jurisprudence, Plaintiffs are correct that this case presents issues of first impression.  Because no Louisiana Supreme Court decision has decided a directly analogous case, this Court must proffer an *Erie* guess as to how the Louisiana Supreme Court would rule.  *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 436 (5th Cir. 2008).  In doing so, the Court's "task is to attempt to predict state law, not to create or modify it." *Id.* at 442 (quoting *Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).  Courts may look to and draw from the decisions of intermediate appellate state courts for guidance.  *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).  Importantly, when making an *Erie* guess regarding Louisiana law, federal courts must abide by Louisiana's civilian tradition.  In this fashion, federal courts must first examine the primary sources of law: the constitution, codes, and statutes; jurisprudence serves only as a

secondary source.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

Under La. R.S. 29:735(A)(1), any individual who is: (1) a representative of a political subdivision of the State of Louisiana, (2) engaged in emergency preparedness activities, and (3) is acting in compliance with the LHSEADA is covered by the Immunity Provision.  *Cwik v. Murray*, No. CV 22-2844, 2023 WL 4156817 at *3 (E.D. La. June 23, 2023); *Lumpkin v. Lanfair*, No. CIV.A. 09-6248, 2010 WL 3825427 at *3 (E.D. La. Sept. 23, 2010).  As for the first prong and as applicable to this case, the statute only requires that an individual be a "representative" of the state or a political subdivision.[8]  However, the Act does not define this term nor does the term's usage in other provisions of Louisiana law provide much assistance to the Court.[9]

The question before this Court is one of statutory interpretation, which is a question of law.  *Carollo v. Dep't of Transportation & Dev.*, 2021-01670 (La. 9/1/22), 346 So. 3d 751, 759 (citing *Red Stick Studio Development, L.L.C. v. State ex rel Dept.*

---

[8]    In two cases, federal courts have imputed the term "agent" into the Act in place of "representative."  *See Martin v. United States*, No. CV 07-663-FJP-CN, 2008 WL 11417740 (M.D. La. Sept. 24, 2008).  *See also Lemoine v. United States*, No. CIV.A. 07-8478, 2009 WL 2496561 (E.D. La. Aug. 13, 2009).  Other Courts have retained the term "representative" as provided in the text of the Act.  *See Lumpkin v. Lanfair*, No. CIV.A. 09-6248, 2010 WL 3825427 (E.D. La. Sept. 23, 2010); *see also Cwik v. Murray*, No. CV 22-2844, 2023 WL 4156817 (E.D. La. June 23, 2023).  Here, the Court will only endeavor to determine whether the City of Wilson and Worrell were acting as "representatives" of Terrebonne Parish at the time of the accident.

[9]    *See e.g.,* La. Civ. Code art. 2985 *et seq.* (pertaining to the authority to represent another person in legal relations), La. Code Civ. Proc. art. 5251 (defining succession representative and legal representative), La. Code Evid. art. 510(A)(7) (defining representative of a health care provider), La. Code Evid. art. 506 (defining representative of a client and representative of a lawyer), La. Civ. Code art. 881 (explaining representation in the successions context), La. Code Civ. Proc. art. 612 (defining representation for the purpose of class and derivative actions), La. R.S. 51:441 (defining a sales representative).

*of Economic Development*, 10-0193, p. 9 (La. 1/19/11), 56 So. 3d 181, 187).   In Louisiana, "the rules of statutory construction are designed to ascertain and enforce the intent of the legislature in enacting the statute." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 6/29/01), 808 So. 2d 294, 302 (citing *Succession of Boyter*, 99–0761, p. 9 (La.1/7/00), 756 So. 2d 1122, 1128).   Examining the language of the statute itself serves as the starting point of statutory interpretation.   *M.J. Farms, Ltd. V. Exxon Mobil Corp.*, 07-2371, p. 13 (La. 7/1/08), 998 So. 2d 16, 26-27.

When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent.   La. Civ. Code art. 9; La. R.S. 1:4.   However, when a law is susceptible of different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law."   La. Civ. Code art. 10.   The Civil Code also provides, "The words of the law must be given their generally prevailing meaning" while "[w]ords of art and technical terms must be given their technical meaning when the law involves a technical matter."   La. Civ. Code art. 11; *See also* La. R.S. 1:3.   Further, undefined words in a statute must be given their plain meaning.   *See Oubre v. Louisiana Citizens Fair Plan*, 79 So. 3d 987, 997 (La. 2011); *See also* La. R.S. 1:3 ("Words and phrases … shall be construed according to the common and approved usage of the language").   In order to garner the plain meaning and common usage of undefined words in a statute, dictionaries serve as a valuable resource.   *Turner v. East Baton Rouge Parish School Board*, 17-1769 (La. App. 1 Cir. 6/14/18), 252 So. 3d 990, 994., (citing *Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138

(La. 5/20/03), 851 So. 2d 959, 964).  *See also Hopkins v. Howard*, 05-0732 (La. App. 4 Cir. 4/5/06), 930 So. 2d 999, 1005, writ denied, 06-1047 (La. 6/23/06), 930 So. 2d 984.

Black's Law Dictionary defines a representative as "someone who stands for or acts on behalf of another."  Black's Law Dictionary (11th ed. 2019).  Here, the City of Wilson and Worrell, through the mutual aid agreement with Terrebonne Parish, acted as force multipliers to Terrebonne Parish's employees in restoring electrical power to Louisiana citizens.  The work they performed was at the request of Terrebonne Parish and was functionally the same work then being performed by Terrebonne Parish employees.  Because the City of Wilson and Worrell were indisputably standing in for Terrebonne Parish employees and acting on behalf of the parish in its hurricane recovery efforts, they were acting as Terrebonne Parish's "representatives" for the limited purpose of its disaster recovery efforts.

Other pertinent provisions of the Act support this interpretation.  When construing the meaning of a term in a statute, courts must look to the context in which it is used.  *See* La. R.S. 1:3 ("Words and phrases shall be read with their context …").  Further, when interpreting a statute, the court should give it the meaning the legislature intended.  *Arshad v. City of Kenner*, 2011-1579 (La. 1/24/12), 95 So. 3d 477, 484, opinion after grant of writ, 2011-1579 (La. 10/12/11), 74 So. 3d 712, and opinion after grant of writ, 2011-1814 (La. 10/12/11), 74 So. 3d 712 (citing *ABL Mgmt., Inc. v. Bd. of Sup'rs of S. Univ.*, 2000-0798 (La. 11/28/00), 773 So. 2d 131, 135).  Here, one of the Act's primary purposes is to ensure "that all … emergency preparedness functions of the state be coordinated to the maximum extent possible with the

comparable functions of the federal government, other states, and localities…" La. R.S. 29:722(B).[10]  Louisiana courts have also cited, as instructive, a Louisiana Attorney General Opinion regarding the broad purpose of the Act, which states, "The immunity provisions contained in R.S. 29:735 are afforded to anyone engaged in any homeland security and emergency preparedness activity after a public health emergency is declared, except in the case of willful misconduct." Op. Atty. Gen., No. 10-0124 (July 23, 2010), 2010 WL 32009552; *See also Koonce v. St. Paul Fire and Marine Ins. Co.*, 172 So. 3d 1101 (La. App. 3d. Cir. 2015), writ denied 184 So. 3d 36 (La. 2015).

It is undisputed that Worrell was sent to Louisiana at the request of LUS on behalf of Terrebonne Parish to assist Terrebonne Parish in its Hurricane Ida recovery efforts during a declared state of emergency.[11]  As part of his duties, Worrell attended daily meetings with the Director of the Terrebonne Parish Utilities Department along with the department's employees and other crews in order to discuss safety measures

---

[10]    Other relevant purposes listed within the LHSEADA include: "to provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters," "to authorize and provide for cooperation in emergency or disaster … response and recovery," and "to authorize and provide for management systems embodied by coordination of activities relating to emergency or disaster …. response and recovery by agencies and officers of this state, and similar state-local, interstate, and foreign activities in which the state and its political subdivisions may participate." La. R.S. 29:722(6), (7), & (8).

[11]    *See generally Robin v. United States*, No. 04-2230, 2006 WL 2038169, *2 (E.D. La. July 17, 2006) (finding defendant was a representative because he was working at the behest of a state agency and was "acting pursuant to the Governor's declaration of a state of emergency pursuant to La. R.S. 29:723.").  *See also Lumpkin v. Lanfair*, No. CIV.A. 09-6248, 2010 WL 3825427 (E.D. La. Sept. 23, 2010) (finding a Tennessee National Guardsman a representative of the state because he traveled to Louisiana at the behest of the state and was operating at a time and under circumstances dictated by the state.)

and log where each crew would be working each day.  [Doc. 49-11, p. 8].  During his deployment to Louisiana, Worrell was performing the same work and for the same purpose as employees of the Terrebonne Parish Utilities Department – namely, fixing the electrical infrastructure damaged by the storm.  Though Worrell remained on the City of Wilson's payroll throughout his time in Louisiana, Terrebonne Parish reimbursed the City of Wilson for all relevant expenses including labor, equipment, lodging, meals, and other miscellaneous travel costs.  [*See* Doc. 49-6, pp. 66-69, 101-102].

Ultimately, the Court finds that the plain meaning of the word "representative" applies and best conforms with the purpose of the Act.  At bottom, because: (i) Worrell was working in Terrebonne Parish at the request of a political subdivision of the State of Louisiana, and (ii) performing a governmental function normally assigned to Terrebonne Parish employees, the Court finds that Worrell and the City of Wilson fall squarely into the broad class of "representatives" the legislature intended the LHSEADA Immunity Provision to cover.[12]  The first element of the Immunity Provision is therefore satisfied.

---

[12]     Plaintiffs' briefing also raises that the Mutual Aid Agreement and Addendum explicitly waives any agency relationship between Terrebonne Parish and the City of Wilson and provides that the Municipality under the Agreement would be working as an independent contractor.  Additionally, they point to another provision which provides that personnel of the City of Wilson would be considered employees of the City of Wilson throughout their work in accordance with the Mutual Aid Agreement.  Because of this, Plaintiffs assert that Worrell and the City of Wilson cannot be considered representatives of Terrebonne Parish.  However, regardless of whether the City of Wilson was an independent contractor and Worrell its employee, the plain meaning of the term "representative," coupled with the clear purpose and legislative intent of the Act, demonstrates that Worrell and Wilson were acting as representatives of Terrebonne Parish when the subject accident occurred.

The second element of the Immunity Provision requires that the covered person or entity be engaged in emergency preparedness activities. The LHSEADA's definition of emergency preparedness includes the "response to, and the recovery from emergencies or disasters." La. R.S. 29:723(6). Applicable here, Louisiana courts have consistently held that an individual can be engaged in emergency preparedness activity when traveling to an emergency preparedness destination. In *Rabee v. Louisiana Dep't of Pub. Safety & Corr.*, 23-384 (La. App. 5 Cir. 11/2/23), reh'g denied (Nov. 17, 2023), the Louisiana Fifth Circuit Court of Appeal found that the act of a Department of Public Safety and Corrections ("DPSC") employee driving a DPSC vehicle to a hotel in order to assist with and provide security for hurricane evacuees during a state of emergency constituted an emergency preparedness activity.[13]

Likewise, in *Benton v. State through Dep't of Child. & Fam. Servs.*, 2020-1214 (La. App. 1 Cir. 8/13/21), *writ denied sub nom. Benton v. State*, 2021-01815 (La. 1/26/22), 332 So. 3d 82, the Louisiana First Circuit Court of Appeal found that a Department of Child and Family Services ("DCFS") employee driving outside of normal work hours to an alternate work location to distribute Disaster Supplemental

---

[13]   In *Rabee*, the Department of Public Safety and Corrections employee was driving to the Hilton Riverside Hotel in New Orleans to assist with securing Hurricane Laura evacuees from Lake Charles. *Rabee v. Louisiana Dep't of Pub. Safety & Corr.*, 23-384 (La. App. 5 Cir. 11/2/23) at *1, reh'g denied (Nov. 17, 2023). The affidavit introduced indicated the employee was compensated for his time traveling to and from the Hilton Riverside hotel in the DPSC vehicle during the assignment and that his use of the vehicle was related to the performance of his duties as a DPSC employee. *Id.*

Nutritional Assistance Program ("DSNAP") cards to flood victims during a declared state of emergency was engaged in an emergency preparedness activity.[14]

Here, the mission given to the City of Wilson and its employees by Terrebonne Parish required that the crew travel between Houma, where the crew aided with power restoration, and Lafayette, where lodging was provided.  Thus, for crew members such as Worrell, his return to Lafayette each day after work was a necessary part of the "emergency preparedness activities" and therefore covered by the Immunity Provision.  Thus, there is no genuine dispute of material fact as to the second prong of the Immunity Provision.

The third requirement of the Immunity Provision requires that an individual act in compliance with the LHSEADA.  Here, this third element is not in dispute. The LHSEADA provides immunity for representatives of the state who are "engaged in any emergency preparedness activities, except in the case of willful misconduct." La. R.S. 29:735.  As to this last prong, Plaintiffs did not allege willful misconduct; rather Plaintiffs brought only negligence actions against Defendants.  *See Cwik v. Murray*, No. CV 22-2844, 2023 WL 4156817, at *3 (E.D. La. June 23, 2023).

Given the facts and circumstances of this case, the Court must conclude that Worrell was acting within the purview of the LHSEADA's Immunity Provision at the time of the subject automobile accident.  Because all elements of the Immunity

---

[14]    Notably, the accident occurred more than forty miles away from the disaster relief site, and the defendant employee was driving her boyfriend's vehicle at the time of the accident. *Benton v. State through Dep't of Child. & Fam. Servs.*, 2020-1214 at *2 (La. App. 1 Cir. 8/13/21), *writ denied sub nom.  Benton v. State*, 2021-01815 (La. 1/26/22), 332 So. 3d 82.

Provision are met, both Worrell and the City of Wilson have statutory immunity under La. R.S. 29:735(A)(1).

C<small>ONCLUSION</small>

For the reasons stated herein, this Court concludes that there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Accordingly,

IT IS HEREBY ORDERED that Defendants' M<small>OTIONS FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small> [Docs. 49, 51] are GRANTED and all Plaintiffs' claims are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 24th day of January 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE